1
2
3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

4
5
6

V. REAL ESTATE GROUP, INC. *et al.*,

           Plaintiffs,

     vs.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

2:14-cv-1096-RCJ-CWH

**ORDER**

This case arises from the United States Citizenship & Immigration Service's ("USCIS") decision to revoke its initial approval of various I-526 petitions. Pending before the Court is the USCIS's Motion to Dismiss (ECF No. 30). For the reasons contained herein, the motion is GRANTED in part and DENIED in part.

**I.     PROCEDURAL HISTORY AND FACTS**

The employment-based, fifth preference ("EB-5") immigrant visa category allocates a certain number of visas each year to "qualified special immigrants" who commit a threshold amount of capital to a United States business that either employs or will employ at least ten United States citizens. 8 U.S.C. § 1153(b)(5)(A). An alien entrepreneur seeking a visa under this program prepares and files an I-526 petition to the USCIS. 8 C.F.R. § 204.6(c). To qualify, the alien entrepreneur must invest at least $1,000,000 into a new commercial enterprise ("NCE"), or a minimum of $500,000 if the location of the NCE is considered a Target Employment Area

1

("TEA"). *Id.*§ 204.6(f).  An investor organizing an original business to satisfy the NCE

requirement must submit a "comprehensive business plan" detailing the nature and projected size

of the NCE so that no fewer than ten jobs will be created. *Id.* § 204.6(j)(4).  The signed I-526

petition along with the accompanying documentation is submitted to the USCIS for review. *Id.* §

204.6(j).  If, after the initial review, the USCIS determines that the petition lacks sufficient

supporting evidence, it sends a request for additional evidence ("RFE") to the petitioner

indicating the need for supplemental documentation.  Once this process is complete, the USCIS

makes its determination.

      If the USCIS approves the I-526 petition, then the immigrant investor may apply for

conditional permanent resident status at the United States consular post in the investor's own

country. 8 U.S.C. §§ 1201–02, 1186b(a)(1).  The Secretary of Homeland Security retains the

right to revoke an approved I-526 petition "at any time, for what he deems to be good and

sufficient cause." 8 U.S.C. § 1155.  A revocation of the approval, however, may occur only after

notice is given to the alien investor and he or she is provided with "the opportunity to offer

evidence in support of the . . . self-petition and in opposition to the grounds alleged for

revocation of the approval." 8 C.F.R. § 205.2(b).  The Notice of Intent to Revoke ("NOIR") must

explain "the specific reasons" why the approval is being revoked so that the petitioner knows of

the specific deficiencies in his or her petition.  After receiving the petitioner's response to the

NOIR, the USCIS then decides whether to revoke its prior approval. *Id.* § 205.2(c).  If the

investor disagrees with the USCIS's decision to revoke its approval, he or she has fifteen days

after the service of a notice of revocation to appeal the revocation to the Board of Immigration

Appeals. 8 C.F.R. § 103.3(a)(1)(ii).

2

Steven Lee, a former immigrant investor who received an EB-5 visa years ago and who is now a United States citizen, formed Plaintiff V Real Estate Group, Inc. ("VREG") as a franchising enterprise that would "attract foreign investment and immigrant investors from China who desired to follow [his] example and obtain permanent residence and/or citizenship in the US." (Lee Decl. ¶¶ 4–7, ECF No. 11).  With the advice of counsel, Lee created a business model that he believed satisfied the criteria of the EB-5 program. (*Id.* ¶ 8).  Lee chose Clark County, Nevada for his operations because parts of Clark County are TEAs, requiring an investment of $500,000 rather than $1,000,000. (*Id.* ¶ 9).  Liang Shao, Yongming Hu, Yanzhao Zou, and Xiaolong Li (collectively "the Immigrant Investors") each used Lee's business plan to establish franchised real estate companies ("the NCE Plaintiffs"). (*Id.*¶ 10).  The Immigrant Investors then each filed I-526 petitions with the USCIS at the end of 2012 or near the beginning of 2013. (Voigtmann Decl. ¶¶ 5, 11, 17, 23, 29, ECF No. 6).  Subsequently, the USCIS sent a RFE to each Investor seeking supplemental evidence that an NCE had been established in a TEA, that the investment capital was in the process of being invested, and that the capital had been placed "at risk." (RFE 2–4, ECF No. 6-2).  Each Investor responded to the RFE, and the USCIS approved the I-526 petitions. (Voigtmann Decl. ¶¶ 7, 13, 19, 25, 31).  The USCIS forwarded the approved petitions to the National Visa Center for consular processing, but the petitions were returned to the USCIS. (Shao NOIR 2, ECF No. 6-4).

The USCIS then notified the Immigrant Investors that their petitions were approved in error by sending them each a NOIR. (*See, e.g.*, *id.*).  The NOIR stated that because the full $500,000 investment would be released from escrow to VREG rather than to the various entities created by the Immigrant Investors, the record was insufficient to show that the funds would be made "immediately available to or directly transferred to the NCE[s]." (*Id.* at 3).  The NOIR also

1    identified employment creation and the overall business model as causes for the potential

2    revocation. (*Id.* at 5–7).  The Immigrant Investors each responded to the NOIR, (Response to

3    Intent to Revoke, ECF No. 6-5), but their responses apparently did not correct the deficiencies

4    since a final revocation occurred on or around May 30, 2014. (Notice of Revocation, ECF No.

5    9-1).  The USCIS explained that the approval was revoked because the Immigrant Investors'

6    business plan did not demonstrate that the NCEs would require ten employees or that the capital

7    investment was placed "at risk" for the purpose of generating a return. (Notice of Revocation 4).

8        Plaintiffs in this suit include VREG and the four NCEs established by the Immigrant

9    Investors (collectively "Plaintiffs").  Plaintiffs rely on Section 702 of the Administrative

10   Procedure Act ("APA") to bring this action as "person[s] suffering legal wrong" because of the

11   USCIS's decision to revoke the Immigrant Investors' I-526 petitions. 5 U.S.C. § 702.  The

12   Complaint contains three causes of action: (1) intentional or negligent interference with

13   economic advantage; (2) intentional interference with business relations; and (3) declaratory

14   judgment.  Plaintiffs initially sought a preliminary injunction of the USCIC's revocation, which

15   the Court denied. (ECF No. 35).  The USCIS now moves for dismissal of the case for lack of

16   subject-matter jurisdiction pursuant to Rule 12(b)(1), or alternatively, for Plaintiffs' failure to

17   state a claim for which relief can be granted pursuant to Rule 12(b)(6).

18   **II.    LEGAL STANDARDS**

19       **A.  12(b)(1) Motion to Dismiss**

20       Federal Rule of Civil Procedure 12(b)(1) states that a court may dismiss a claim for lack

21   of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  While the defendant is the moving party

22   in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction.  Consequently,

23   "the plaintiff bears the burden of proving that the case is properly in federal court." *Wright v.*

24

1   *Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1198 (D. Nev. 2009) (citing *McCauley v.*

2   *Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)).   A motion to dismiss for lack of

3   subject-matter jurisdiction pursuant to Rule 12(b)(1) may take one of two forms. *Thornhill*

4   *Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).   It may be a "facial"

5   challenge or it may be a "factual" challenge. *Id.*   "In a facial attack, the challenger asserts that the

6   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

7   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).   "[I]n a factual attack, the

8   challenger disputes the truth of the allegations that, by themselves, would otherwise invoke

9   federal jurisdiction." *Id.*

10          If the movant's challenge is a facial one, then the "court must consider the allegations of

11   the complaint to be true and construe them in the light most favorable to the plaintiff." *Nevada ex*

12   *rel. Colo. River Comm'n of Nev. v. Pioneer Cos.*, 245 F. Supp. 2d 1120, 1124 (D. Nev. 2003)

13   (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989)).   If the attack is factual,

14   however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of

15   disputed material facts will not preclude the trail court from evaluating for itself the merits of

16   jurisdictional claims." *Thornhill Publ'g Co.*, 594 F.2d at 733 (quoting *Mortensen v. First Fed.*

17   *Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).   The plaintiff has the "burden of

18   establishing that the court, in fact, possesses subject-matter jurisdiction" by present[ing]

19   affidavits or any other evidence necessary." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th

20   Cir. 1989).   Indeed, the district court is "free to hear evidence regarding jurisdiction and to rule

21   on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United*

22   *States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co.*, 594 F.2d at 733).

23   ///

24

1

**B.  Rule 12(b)(6) Motion to Dismiss**

2      The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the

3 legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The issue

4 is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer

5 evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)

6 (quotations omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed

7 factual allegations, but it must plead "enough facts to state a claim to relief that is plausible on its

8 face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell*

9 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

10 (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows

11 the court to draw the reasonable inference that the defendant is liable for the misconduct

12 alleged").  Even though a complaint does not need "detailed factual allegations" to pass Rule

13 12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the

14 speculative level . . . on the assumption that all the allegations in the complaint are true (even if

15 doubtful in fact)." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or

16 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

17 "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

18 enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

19 **III.   DISCUSSION**

20      **A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

21      The USCIS contends that this case should be dismissed for lack of subject-matter

22 jurisdiction pursuant to Rule(12)(1).  The USCIS argues that dismissal under Rule 12(b)(1) is

23 appropriate for two separate reasons.  First, the USCIS contends that Plaintiffs lack standing to

24

6

1    bring this lawsuit and that the absence of standing deprives the Court of subject-matter

2    jurisdiction.  Second, the USCIS contends that the Court lacks subject-matter jurisdiction over

3    Plaintiffs' causes of action because the United States has not waived sovereign immunity for the

4    type of relief that Plaintiffs seek under these claims.

5                        **1.   Standing**

6           The USCIS argues that the Court does not have subject-matter jurisdiction over this case

7    because Plaintiffs lack standing.  "Lack of standing is a defect in subject-matter jurisdiction and

8    may properly be challenged under Rule 12(b)(1)." *Wright*, 597 F. Supp. 2d at 1199 (citing

9    *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  "The question of standing

10   'involves both constitutional limitations on federal-court jurisdiction and prudential limitations

11   on its exercise.'" *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Warth v. Seldin*, 422 U.S.

12   490, 498 (1975)).  "The constitutional aspect inquires 'whether the plaintiff has made out a case

13   or controversy' between himself and the defendant within the meaning of Article III 'by

14   demonstrating a sufficient personal stake in the outcome.'" *Fleck & Assocs., Inc. v. City of Phx.*,

15   471 F.3d 1100, 1103 (9th Cir. 2006) (quoting *Warth*, 422 U.S. at 498).  To satisfy the "case" or

16   "controversy" requirement found in Article III, "which is the 'irreducible constitutional

17   minimum' of standing," *Bennett*, 520 U.S. at 162 (quoting *Lujan v. Defenders of Wildlife*, 504

18   U.S. 555, 560 (1992)), "a plaintiff must show that (1) the plaintiff has suffered an injury in fact,

19   (2) the injury is traceable to the defendant, and (3) a favorable decision will redress the injury."

20   *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 (9th Cir. 2007).

21          "In addition to the immutable requirements of Article III, 'the federal judiciary has also

22   adhered to a set of prudential principles that bear on the question of standing.'" *Bennett*, 520 U.S.

23   at 162 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,*

24

                                                 7

1   *Inc.*, 454 U.S. 464, 474–75 (1982)).  "[T]hese 'judicially self-imposed limits on the exercise of

2   federal jurisdiction' are 'founded in concern about the proper—and properly limited—role of the

3   courts in a democratic society.'" *Id.* (citations omitted).  Traditionally numbered among the

4   prudential requirements is the prohibition against a litigant asserting the legal rights of third

5   parties, *see Fleck & Assocs., Inc.*, 471 F.3d at 1104, as well as the zone-of-interest doctrine.

6   *Bennett*, 520 U.S. at 162.  Recently, the Supreme Court indicated that prudential standing is a

7   "misnomer as applied to the zone-of-interest analysis" because rather than involving judicial

8   self-restraint, the zone-of-interest inquiry requires the court to use traditional methods of

9   statutory interpretation in order to ascertain whether Congress ever granted the plaintiff the right

10  to sue under a particular substantive statute. *Lexmark Int'l, Inc. v. Static Control Components,*

11  *Inc.*, 134 S. Ct. 1377, 1387 (2014).  Courts, therefore, should focus their inquiry on whether a

12  plaintiff falls within the class of plaintiffs whom Congress authorized to sue under the statute. *Id.*

13       The zone-of-interest analysis originated "as a limitation on the cause of action for judicial

14  review conferred by the Administrative Procedure Act." *Id.* at 1388.  The "classic formulation"

15  of the zone-of-interest test is "whether the interest sought to be protected by the complainant is

16  arguably within the zone of interests to be protected or regulated by the statute or constitutional

17  guarantee in question." *Bennett*, 420 U.S. at 175 (quoting *Ass'n of Data Processing Serv. Orgs.,*

18  *Inc. v. Camp*, 397 U.S. 150, 153 (1970)).  In the APA context, the test is not "especially

19  demanding" and "the test 'forecloses suit only when a plaintiff's interests are so marginally

20  related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be

21  assumed that' Congress authorized that plaintiff to sue." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1389

22  (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199,

23

24

2210 (2012)).  This "lenient approach" is intended to preserve "the flexibility of the APA's omnibus judicial-review provision." *Id.*

### i. Article III Standing

The USCIS does not challenge the facts in Plaintiffs' Complaint that would otherwise establish standing in this case.  Rather, the USCIS argues that the facts as alleged fail to demonstrate a concrete and particularized injury for which the Court can provide redress.  The USCIS's motion under Rule 12(b)(1), therefore, is categorized as a facial challenge to subject-matter jurisdiction. *See Safe Air*, 373 F.3d at 1039.  Accordingly, the Court must consider the allegations in the Complaint as true and construe them in the light most favorable to Plaintiffs. *See Pioneer Cos.*, 245 F. Supp. 2d at 1124.  Plaintiffs respond to the USCIS's contentions by highlighting portions of their Complaint that articulate their alleged injury. Plaintiffs claim that the USCIS caused "an actual disruption of the economic relationship" between the Immigrant Investors, the NCEs, and VREG because VREG's business model "is dependent on the Immigrant Investors obtaining conditional residency in the United States." (Compl. ¶ 64, ECF No. 1).  Further, Plaintiffs allege to have suffered the "loss of a central and key component of their business that will seriously compromise their ability to continue in their current form." (*Id.* ¶ 65).  Plaintiffs also allege that the revocation has "resulted in economic injury to Plaintiffs' business and threatens to cause the entire business to fail." (*Id.* ¶ 75).

Construed in the light most favorable to Plaintiffs, these allegations present sufficient harm to constitute injury in fact.  Injury in fact "necessitates a showing of 'an invasion of a legally protected interest' that 'affects the plaintiff in a personal and individual way.'" *Fleck & Assocs., Inc.*, 471 F.3d at 1104 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).  The injury must be "(a) concrete and particularized and (b) actual or imminent, not

1    conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotations omitted).

2    Moreover, the injury is traceable to the defendant if there is "a causal connection between the

3    injury and the conduct complained of." *Id.* (citation omitted).  The underlying theme to

4    Plaintiffs' Complaint is that by revoking the approval of the Immigrant Investors' I-526

5    petitions, the USCIS has jeopardized Plaintiffs' economic well-being.  "Economic injury is

6    clearly a sufficient basis for standing" under the *Lujan* test. *San Diego Cnty. Gun Rights Comm.*

7    *v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996).  Although most, if not all, of Plaintiffs' allegations

8    related to economic injury are conclusory statements unaccompanied by supporting facts of

9    actual economic loss, "[a]t this stage of the proceedings, [the court does] not speculate as to the

10   plausibility of [Plaintiffs'] allegations." *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 869

11   (9th Cir. 2002) (citation omitted).  "[I]n order to survive a motion to dismiss," Plaintiffs need

12   only "to plead general factual allegations of injury," for the court presumes that the "'general

13   allegations embrace those specific facts that are necessary to support the claim.'" *LSO, Ltd. v.*

14   *Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) (quoting *Lujan*, 504 U.S. at 561).  Thus, the Court

15   accepts as true for purposes of this motion that the USCIS's actions have caused economic injury

16   to Plaintiffs.  Economic harm to the NCEs themselves and to VREG's business surely affects

17   Plaintiffs in a personal and individual way. *See Fleck & Assocs., Inc.*, 471 F.3d at 1104.

18   Therefore, Plaintiffs have sufficiently alleged an injury in fact to satisfy Article III standing.

19        Further, the relief that Plaintiffs seek would redress the alleged injury. To establish

20   redressability, the plaintiff "must show that it is likely, as opposed to merely speculative, that the

21   injury will be redressed by a favorable decision." *Bernhardt*, 279 F.3d at 869 (citing *Friends of*

22   *the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000)).  The USCIS argues that

23   Plaintiffs' alleged injury cannot be redressed because the State Department recently announced

24

that the congressionally-set cap on the issuance of EB-5 immigrant visas for alien investors from

China has been met for fiscal year 2014 and that additional visas will not be available again until

fiscal year 2015. (Defs.' Mot. Dismiss 13–14, ECF No. 30).  This argument is not persuasive.

Plaintiffs request that the Court issue an order that the USCIS reinstate approval of the

Immigrant Investors' I-526 petitions. (*See* Compl. ¶ 84).  Plaintiffs do not claim that their injury

resulted from the Immigrant Investors' inability to obtain visas in fiscal year 2014, but that the

USCIS caused them economic harm by jeopardizing the Immigrant Investors' ability to ever

obtain an EB-5 visa.  As the USCIS concedes, additional visas for alien investors from China

will be available in the future.  If, as Plaintiffs' Complaint claims, the USCIS's revocation of

approval was the cause of the injury allegedly suffered by Plaintiffs, then reinstatement of

approval should remedy that harm.  Indeed, if the Immigrant Investors' I-526 petitions are

reapproved, then Immigrant Investors will be placed back in line for EB-5 visas.  Accordingly,

the Court finds that a ruling in Plaintiffs favor would redress the injury as it has been alleged in

Plaintiffs' Complaint.

Because the Court finds that Plaintiffs' Complaint alleges an injury in fact that was

caused by the USCIS revoking its approval of the Immigrant Investors' I-526 petitions, which

would be redressed by a ruling in their favor, Plaintiffs have established Article III standing.

Therefore, the Court now considers the USCIS's argument that Plaintiffs do not have prudential

standing in this case.

### ii. Zone of Interest and Prudential Standing

The USCIS argues that Plaintiffs also lack standing because they do not fall within the

zone of interests of the relevant provisions of the Immigration and Nationality Act ("INA").

Plaintiffs respond that the purpose of the EB-5 program is to promote the immigration of

investors who can benefit the United States economy by providing capital and employment

opportunities, which they argue corresponds with their interests in the present action. (Pls.'

Opp'n 16–17, ECF No. 32).  When dealing with a challenge to agency action under the APA,

courts must apply the zone-of-interest test "in keeping with Congress's 'evident intent' when

enacting the APA 'to make agency action presumptively reviewable.'" *Patchak*, 132 S. Ct. at

2210 (citation omitted).  The word "arguably" in the test indicates "that the benefit of any doubt

goes to the plaintiff." *Id.*  Nonetheless, to satisfy the test Plaintiffs must establish that the injury

they complain of "falls within the 'zone of interests' sought to be protected by the statutory

provision whose violation forms the legal basis for [their] complaint." *Bennett*, 520 U.S. at 176

(quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883 (1990)).

       In this case, the Court finds that Plaintiffs' alleged injury places them within the zone of

interest of the applicable statutes.  The Immigrant Investors' I-526 petitions were filed under the

employment-based, fifth preference immigrant investor visa category.  The statute states that

visas shall be made available "to qualified immigrants seeking to enter the United States for the

purpose of engaging in a new commercial enterprise." 8 U.S.C. § 1153(b)(5).  The statute

requires "[a]ny alien desiring to be classified under section 1153(b)(5)" to "file a petition with

the Attorney General for such classification." 8 U.S.C. § 1154(a)(1)(H).  The burden to file the

EB-5 petition, therefore, rests with the alien investor.  The text of the statute does not anticipate

the involvement of any other party in the alien investor's attempt to secure an EB-5 visa.  The

USCIS argues that this is proof that Congress did not intend parties like VREG and the NCE

Plaintiffs to fall within the zone of interests contemplated by these statutes.  The USCIS reasons

that because an EB-5 petition is a "self-petition," meaning that the petition may be submitted

12

1   only by the alien, *see* 8 C.F.R. § 204.6(c), other parties should not be able to challenge the

2   USCIS's revocation of an I-526 petition.  Based on the facts in this case, the Court disagrees.

3          Generally, financial injury alone is not sufficient to satisfy the zone-of-interest test. *See*

4   *City of L.A. v. Cnty. of Kern*, 581 F.3d 841, 848 (9th Cir. 2009).  Plaintiffs in this case, however,

5   allege more than mere economic harm.  VREG's business model is based on its ability to

6   facilitate the investment and transition of alien investors into the United States.  VREG created,

7   with the advice of counsel, what it believed was a program that satisfied the EB-5 requirements.

8   With the USCIS revoking its initial approval of the Immigrant Investors' petitions, VREG

9   alleges that it is now in jeopardy of failing altogether since it does not understand how the

10  USCIS reached its decision or how it could improve its program so that future petitions are not

11  denied.  Lee states that there are a number of potential investors who are interested in developing

12  companies within Nevada using the VREG model, but who have lost confidence in the program

13  because of the USCIS's actions.  The interests identified by VREG certainly fall within the

14  purpose of the EB-5 statutes, which is to provide an investment of capital to promote economic

15  growth and development within the United States.[1]   VREG's alleged interests in pursuing this

16  lawsuit do not appear to be inconsistent with that purpose. *See Lexmark Int'l, Inc.*, 134 S. Ct. at

17  1389.  Moreover, VREG's interest in the USCIS's revocation of approval in this case is more

18  than just marginally related to the statutes' purpose since the company was actually founded with

19  the intent that its model would satisfy the requirements of the EB-5 program and bring Chinese

20  investors to the country. *See Data Processing*, 397 U.S. at 153 (emphasizing that the zone-of-

21  interest test "turns on the interest sought to be protected, not the harm suffered by the plaintiff").

22  _____

[1] *See* U.S. Citizenship & Immigration Services, EB-5 Adjudications Policy (PM-602-0083), at 1–2 (Dep't of
Homeland Security May 30, 2013), *available at*

23  http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2013/May/EB-
5%20Adjudications%20PM%20%28Approved%20as%20final%205-30-13%29.pdf (stating that "[t]he purpose of

24  the EB-5 Program is to promote the immigration of people who can help create jobs for U.S. workers through their
investment of capital into the U.S. economy").

Likewise, the NCE Plaintiffs are in a unique position beyond that of some unrelated third party alleging financial injury.  Each NCE was created and funded by the Immigrant Investors with the expectation that the individual Investors would play a principal role in organizing and operating the business.  While the NCEs may arguably be controlled by the Immigrant Investors despite their lack of physical presence in Nevada, certainly these corporations would not have been established or funded had the Immigrant Investors not anticipated that they would be available to conduct the operations in person.  As with VREG, the Court finds that the NCE Plaintiffs allege an injury that is more than marginally related to the purpose of the statutes at issue. *Lexmark Int'l, Inc.*, 134 S. Ct. at 1389.  If the USCIS's decision stands, then there is a real possibility that the NCE Plaintiffs will eventually lose their operating capital and be dissolved.  Therefore, given that the zone-of-interest test is not especially demanding in the APA context, and that "the benefit of any doubt goes to the plaintiff," *Patchak*, 132 S. Ct. at 2210, the Court finds that both VREG and the NCE Plaintiffs fall within the zone of interests protected by the laws invoked and they may proceed with the present lawsuit.[2]

## 2. Sovereign Immunity

The USCIS alternatively argues that the Court lacks subject-matter jurisdiction in this case because Plaintiffs failed to plead a statutory provision under which their claims can be brought that properly waives the federal government's sovereign immunity. "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  The United States must consent to be sued in the particular court and for the particular alleged wrong before

---

[2] The USCIS also argues that Plaintiffs lack prudential standing in this case because they are asserting the rights of third parties, the Immigrant Investors.  A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Am. United for Separation of Church & States, Inc.*, 454 U.S. 464, 474 (1982).  In this case, both VREG and the NCE Plaintiffs are asserting their own rights and interest.  The harm alleged is injury suffered by the various business entities themselves and the right to a review of the USCIS's actions is a right that VREG and the NCE Plaintiffs claim on behalf of themselves through the APA.  Therefore, the Court finds that prudential standing is also satisfied here.

14

1   jurisdiction to entertain the suit exists. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941);

2   *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United

3   States may not be sued without its consent and that the existence of consent is a prerequisite for

4   jurisdiction.").

5          Plaintiffs assert that their citation to the APA in conjunction with Section 1331 makes

6   jurisdiction is proper.  The APA does not independently confer jurisdiction on the district courts.

7   *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998).  "Rather, the APA

8   prescribes standards of judicial review of an agency action, once jurisdiction is otherwise

9   established." *Id.*  However, a federal court has jurisdiction pursuant to 28 U.S.C. Section 1331

10  "over challenges to federal agency action as claims arising under federal law." *Id.*  Moreover,

11  Section 702 waives sovereign immunity for claims brought under the APA that do not seek

12  monetary relief. 5 U.S.C. § 702.  Here, Plaintiffs invoke Section 1331 as the jurisdictional basis

13  for their claim that the USCIS failed to comply with applicable laws and procedures, thereby

14  acting arbitrarily and capriciously, when it revoked approval of the I-526 petitions. (Compl.

15  ¶ 15).  The Court finds that whether the USCIS complied with the INA, and the regulations

16  promulgated thereunder, clearly raises a question under federal law. *See Gallo Cattle Co.*, 159

17  F.3d at 1198 (challenging agency action raises issues of federal law).  The Court also finds that

18  Plaintiffs' cause of action for declaratory judgment falls within the purview of the APA since it

19  challenges a final action of the USCIS and does not seek monetary relief. 5 U.S.C. §§ 702, 703,

20  704.  Finding both jurisdiction and a waiver of immunity for the declaratory judgment claim, the

21  Court DENIES the USCIS's motion to dismiss for lack of subject-matter jurisdiction as to

22  Plaintiffs' third cause of action.

23

24

15

1    Plaintiffs' first and second causes of action present a different problem.  Plaintiffs allege

2    that the Court has subject-matter jurisdiction over the interference claims based on supplemental

3    jurisdiction pursuant to 28 U.S.C. Section 1367(a).  The Court disagrees.  Section 1367(a)

4    provides supplemental jurisdiction for claims related to an action over which the court has

5    original jurisdiction, but it does not provide any waiver of immunity. *See* 28 U.S.C. § 1367(a).

6    Thus, although the Court finds that it has original jurisdiction over the declaratory judgment

7    claim pursuant to Section 1331, Section 1367(a) cannot establish jurisdiction over the tortious

8    interference claims because that statute does not authorize suit against the United States.

9    Moreover, Plaintiffs' first and second causes of action do not benefit from the APA's waiver of

10   immunity because the APA applies only to judicial review of agency action, with jurisdiction

11   usually "arising under" federal law. *Parola v. Weinberger*, 848 F.2d 956, 958; *see also Gallo*

12   *Cattle Co.*, 159 F.3d at 1198 (recognizing that the APA is not a jurisdictional statute).  Plaintiffs'

13   interference claims are state law causes of action that do not arise under federal law. *See In re*

14   *Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (identifying the elements of tortious

15   interference with prospective economic advantage); *J.J. Indus. LLC v. Bennett*, 71 P.3d 1264,

16   1267 (Nev. 2003) (identifying the elements of tortious interference with contractual relations).

17   Further, the scope of judicial review under the APA is limited to determining whether the

18   agency's actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

19   with law." 5 U.S.C. § 706.  Although the APA offers a means to challenge administrative and

20   regulatory agency action, it does not provide a forum "for adjudicating government tort

21   liability." *Doe v. Att'y Gen. of U.S.*, 941 F.2d 780, 793 (9th Cir. 1991), *overruled on other*

22   *grounds by Lane v. Pena*, 518 U.S. 187 (1996).   It is true that Plaintiffs seek relief "other than

23

24

16

1    money damages," 5 U.S.C. § 702, but their first and second causes of action sound in tort

2    regardless of the remedy they seek.  Thus, the APA does not apply to the interference claims.

3            Further, the only waiver for sovereign immunity in a torts suit against federal employees

4    acting within the scope of their employment is a limited waiver provided under the Federal Tort

5    Claims Act ("FTCA").  *See United States v. Smith*, 499 U.S. 160, 165–66 (1991) (noting that the

6    FTCA is the exclusive remedy for tortious conduct).  Plaintiffs have not invoked or pled the

7    FTCA in their Complaint, nor could they since there has been no exhaustion of administrative

8    remedies as required by 28 U.S.C. Section 2674(a).  *See Corey v. McNamara*, 409 F. Supp. 2d

9    1225, 1227 (D. Nev. 2006) (finding that the court lacked subject-matter jurisdiction in case

10   alleging tortious conduct of federal employees because the plaintiff failed to plead the FTCA in

11   the complaint and did not exhaust administrative remedies).  Rather, Plaintiffs concede that the

12   FTCA does not apply in this case since Plaintiffs do not seek damages. (Compl. at 22; Pls.'

13   Opp'n 20); *see also Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992)

14   (recognizing that the FTCA does not provide for equitable relief).  The Court, therefore, finds

15   that it does not have subject-matter jurisdiction over the first and second causes of action for

16   tortious interference with economic advantage and business relations because Plaintiffs fail to

17   demonstrate a waiver of sovereign immunity. *See Meyer*, 510 U.S. at 475.  Therefore, the motion

18   to dismiss is GRANTED with prejudice as to these claims.[3]

19           **B.  Motion to Dismiss for Failure to State a Claim**

20           Plaintiffs' only remaining cause of action is for declaratory judgment.  Thus, the Court

21   therefore must determine whether Plaintiffs' Complaint pleads sufficient facts demonstrating the

22   [3] Under all three causes of action, Plaintiffs request an order from the Court "requiring [the] USCIS to reinstate the
approvals of the Immigrant Investors' I-526 Petitions." (Compl. ¶¶ 66, 73, 84).  Thus, even if Plaintiffs were able to

23   demonstrate a waiver of immunity as to their tortious interference claims, the Court would still dismiss the first and
second causes of action because the relief sought thereunder is redundant to the relief sought under Plaintiffs'

24   declaratory judgment claim. *See W. Shoshone Nat'l Council v. United States*, 415 F. Supp. 2d 1201, 1206 (D. Nev.
2006).

1    plausibility that the USCIS arbitrarily and capriciously revoked its initial approval. *See Iqbal*,

2    556 U.S. at 678.   The USCIS argues that the discretion granted to the Secretary of Homeland

3    Security is broad enough that so long as a good reason is provided for the revocation of an I-526

4    petition, approval may be revoked at any time.   The USCIS contends that because the Immigrant

5    Investors were each provided with a Notice of Revocation giving multiple reasons for the

6    revocations, the grounds contained therein qualify as adequate justification for the revocations

7    under the controlling law.

8          The relevant section of the INA states that the Secretary of Homeland Security "may, at

9    any time, for what he deems to be good and sufficient cause, revoke the approval of any petition

10   approved by him . . . ." 8 U.S.C. § 1155.   This authority is delegated to USCIS officers who are

11   authorized to approve employment-based immigrant visa petitions. *See* 8 C.F.R. § 205.2(a).   The

12   USCIS claims that approval of the petitions was revoked because they inadequately showed that

13   the job creation requirement would be met, that the full amount of required personal capital was

14   invested into the NCEs, and that the amount invested was actually put at risk.   Plaintiffs respond

15   that even though justifications were provided, their claim should not be dismissed at this stage of

16   the litigation because they should have an opportunity to conduct discovery and determine

17   whether the reasons contained in the Notices of Revocation "falsely articulate[] the basis for

18   action" and whether the revocation was the product of an unbiased review of the petitions. (Pls.'

19   Opp'n 21).   The Court agrees.

20         The Complaint alleges that the USCIS violated its own procedures and precedent

21   decisions when it revoked the approval of the Immigrant Investors' petitions. (Compl. ¶¶ 30–32).

22   It further alleges that the USICS's revocations violated the INA and APA because it arbitrarily

23   and capriciously targeted the Immigrant Investors' I-526 petitions for reexamination after the

24

initial approval. (*Id.* ¶ 80(a)).  Plaintiffs claim that the USCIS also acted arbitrarily and

capriciously by disregarding the previous analysis conducted by USCIS personnel who approved

the petitions after determining that all statutory requirements, pursuant to the criteria set forth in

precedent opinions, had been met. (*Id.* ¶ 80(b)).  Plaintiffs also claim that the USCIS ignored

statutory and regulatory criteria for the revocation of an approved petition and instead relied

upon impermissible criteria. (*Id.* ¶ 80(d)).  Plaintiffs additionally allege that the USCIS revoked

its approval of the petitions without any evidence that the initial approval was in error and that

the USCIS failed to distinguish or explain the shift in the USCIS personnel's stance regarding

the sufficiency of the Immigrant Investors' petitions. (*Id.* ¶¶ 80(e), 80(g)).

Taking all these factual allegations as true, which a court must do when ruling on a Rule

(12)(b)(6) motion, *see Twombly*, 550 U.S. at 572, Plaintiffs clearly demonstrate the plausibility

that the USCIS acted in an arbitrary and capricious manner when it revoked approval of the

petitions at issue.  An agency acts arbitrarily if it "entirely fail[s] to consider an important aspect

of the problem" or if it "offer[s] an explanation that runs counter to the evidence before the

agency." *Earth Island Institute v. Carlton*, 626 F.3d 462, 468–69 (9th Cir. 2010).  Plaintiffs'

Complaint alleges that the USCIS's explanations in the Notices of Revocation ignored evidence

and failed to consider that the petitions had been approved previously based on the same

information that was in front of the USCIS at the time of revocation. (Compl. ¶¶ 80(a)–80(g)).

The Court finds that the USCIS's articulated reasons for denying the petitions do not preclude

Plaintiffs from arguing that the justifications provided in the Notices of Revocation merely mask

a biased and arbitrary decision to reexamine the Immigrant Investors' petitions.  While the

Secretary's authority allows revocation for what he, or the agency, determines is good and

sufficient cause, an arbitrary decision to revoke approval surely would not qualify. *See Ariz.*

19

*Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001) (stating that agency decisions must be founded on reasoned evaluation of relevant factors and evidence). Therefore, the USCIS's motion to dismiss under Rule 12(b)(6) is DENIED.

## CONCLUSION

IT IS HEREBY ORDERED that the USCIS's Motion to Dismiss (ECF No. 30) is GRANTED in part and DENIED in part.

The Motion is GRANTED with prejudice as to Plaintiffs' first cause of action for intentional or negligent interference with economic advantage and as to Plaintiffs' second cause of action for intentional interference with business relations.

The Motion is DENIED as to Plaintiffs' third cause of action for declaratory judgment.

IT IS SO ORDERED.

Dated:   January 9, 2015
_____

_____
ROBERT C. JONES
United States District Judge